UNITED STATES DISTRICT COURT
MIDDLE  DISTRICT OF FLORIDA

CASE NO. 25-cr-00327-WFJ

UNITED STATES OF AMERICA

v.

JORGE LUIS HERNANDEZ VILLAZON ,

　　Defendant.

_____/

## MOTION TO DISMISS INDICTMENT

Defendant, Jorge Hernandez Villazon, through undersigned counsel, moves to dismiss the Indictment pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(v) because the allegations, even if accepted as true, do not constitute wire fraud as a matter of law and rest on a theory that impermissibly criminalizes defense team activity protected under the Sixth Amendment. Simply put, the indictment does not charge a crime.

## I.  PRELIMINARY STATEMENT

In an indictment that turns the principles of criminal defense advocacy on their head, the government charges Jorge Hernandez, a paralegal and recognized member of criminal defense teams, with wire fraud for assisting clients in pursuing potential sentencing reductions as part of that representation. Stripped to its core, the indictment alleges that criminal defendants facing serious federal charges paid legal defense teams for representation to assist in exploring cooperation and mitigation, engaged in discussions about potential sentencing outcomes, and ultimately did not receive the reductions they hoped for. From that, the government attempts to construct

a fraud prosecution. But unsuccessful advocacy, unfulfilled expectations, and the inherent uncertainty of discretionary sentencing decisions do not constitute a federal crime.

The indictment does not allege that Mr. Hernandez held himself out as an attorney, claimed to be a government official, asserted that he had authority to guarantee sentencing reductions, or falsely represented that any reduction had already been secured. Nor does it identify any specific false statement of existing fact. Instead, the government repeatedly invokes the conclusory label that Mr. Hernandez "promised" substantial sentence reductions, while carefully avoiding any allegation of the actual words spoken. The indictment does not quote, paraphrase, or describe a single statement. It does not allege what was said, when it was said, or in what context. This omission is not incidental. It is the defect. The government substitutes characterization for fact and asks the Court to infer a material misrepresentation without ever identifying one.

This general characterization is not pleading at all; it is evasion. By hiding behind the word "promised," the government attempts to transform inherently contingent, forward looking defense discussions into categorical guarantees without ever alleging that such guarantees were actually made. The difference is dispositive. Whether a statement constitutes fraud depends entirely on its precise content and context. Without the words themselves, there is nothing for the Court to evaluate, no basis to assess falsity, no way to determine materiality, and no facts from which intent to defraud can be inferred. What remains is a conclusion in search of a crime.

Stripped to its essence, the government's theory would criminalize the core defense functions of advising clients regarding cooperation, evaluating potential sentencing outcomes, and pursuing mitigation strategies in the face of prosecutorial discretion. This case does not present fraud, it presents, at most, dissatisfaction with the outcome of legal representation repackaged as a criminal charge. Because the indictment rests on a legally defective theory that neither alleges a material misrepresentation nor pleads an intent to defraud, it fails to state an offense and must be dismissed.

## II. BACKGROUND

On July 1, 2025, a federal grand jury returned a single count indictment charging Jorge Hernandez Villazon with conspiracy to commit wire fraud, beginning in approximately 2020 through return of the indictment,[1] in violation of 18 U.S.C. § 1349. [ECF No. 6]. The ten page, single defendant, indictment charges that Mr. Hernandez:

> did knowingly and willfully combine, conspire, confederate, and agree with others, both known and unknown to the Grand Jury to commit certain offenses, to wit, to execute and attempt to execute a scheme and artifice to defraud, and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, by transmitting and causing to be transmitted by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose fo executing such scheme and artifice, in violation of 18 U.S.C. §1343. All in violation of 18 U.S.C. §1349.

---

[1] During the charged time frame, Mr. Hernandez was actively working as a documented confidential informant with the FBI in the Southern District of New York. His FBI handlers were aware and authorized Mr. Hernandez to continue working with multiple legal teams in the United States and Colombia.

*See* ECF No. 6: 2.

In support of this count, under "Manner and Means of the Scheme," the government alleges that Mr. Hernandez and an unidentified conspirator[2] "promised" international drug traffickers facing extradition and prosecution in the United States substantial sentence reductions in exchange for payments and failed to fulfill those promises, and continued collecting fees. *Id.* at 5. According to the indictment, Mr. Hernandez made these "promises" as a paralegal member of the drug trafficker's legal team. *Id.* at 7. He met with the incarcerated defendants as legal team member and assisted in their defense by discussing the possibility of cooperation and the provision of information that could lead to substantial sentence reductions in federal court proceedings. *Id.*

The indictment devotes four pages to describing the internal cooperation and sentence reduction policies for the United States Attorneys Office for the Middle District of Florida (USAO MDFL). *Id.* at 2-5. It concludes by stating that unless a prosecutor in the USAO MDFL office files a 5K1.1 or a Rule 35 motion, the "U.S. District Court did not have the authority to depart downward from a defendant's" sentence based on substantial assistance to the United States. *Id.* at 5, ¶10. Thus, the indictment itself concedes that neither a paralegal nor any other criminal defense team member has the legal ability to obtain a sentencing reduction for a client based

---

[2]/ For purposes of this Motion, it is important to disclose that Coconspirator 1 is a Colombian attorney and a member of a well-established law firm in Colombia that routinely represents defendants within the Colombian legal system facing extradition to the United States. The indictment alleges that Mr. Hernandez worked with the Colombian attorney.

on substantial assistance.

The indictment further alleges that the anticipated sentence reductions were not ultimately obtained and on that basis, characterizes the alleged promises as fraudulent. Notably, however, the indictment does not identify the specific statements the government contends constitute material misrepresentations or promises. Nor does the indictment allege that Mr. Hernandez represented himself to be an attorney, claimed to possess governmental authority, or asserted that any sentence reduction had already been approved. Instead, the indictment broadly alleges that Mr. Hernandez "promised" sentence reductions that ultimately did not occur.

### III.  LEGAL STANDARD

Under Federal Rule of Criminal Procedure 12(b)(1), a defendant may challenge an indictment as defective for failure to state an offense. Fed. R. Crim. P. 12(b)(3)(B)(v). When considering a pretrial motion to dismiss, a district court's review is limited to "the face of the indictment and, more specifically, the language used to charge the crimes." *United States v. Sharpe*, 438 F.3d 1257, 1263 (11th Cir. 2006). To determine the sufficiency of an indictment, the Eleventh Circuit has articulated a three part test:

> An indictment is sufficient if it: (1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense.

*Id.* at 1263-64. An indictment is defective if it fails to adequately apprise the defendant of the offense charged. *Id.* at 1263.

-5-

Thus, if an indictment tracks the language of the criminal statute, it must include enough "facts and circumstances" to inform an accused of the specific offense charged. *United States v. Bobo*, 344 F.3d 1076, 1083 (11th Cir. 2003)(*quoting Russell v. United States*, 369 U.S. 749, 763 (1962)). This is necessary "not only to give the defendant notice as guaranteed by the [S]ixth [A]mendment, but also to inform the court of the facts alleged to enable it to determine whether the facts are sufficient in law to support a conviction." *See Belt v. United States*, 868 F.2d 1208, 1211 (11th Cir. 1989). If an indictment fails to charge an essential element of the crime, it fails to state an offense and must be dismissed.

## IV.  ARGUMENT

### A.    The Wire Fraud Statutes

The government charged Mr. Hernandez with a single count of conspiracy to commit wire fraud under 18 U.S.C. § 1349, which provides:

> Any person who attempts or conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

In this indictment, the underlying offense is a substantive wire fraud charge under Section 1343, which provides:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1343.

To sustain a conspiracy charge under 18 U.S.C. § 1349, the government must allege that " (1) a conspiracy existed; (2) the defendant knew of it; and (3) the defendant knowingly and voluntarily joined it." *United States v. Moran*, 778 F.3d 942, 960 (11th Cir. 2015). "A conspiracy is an agreement between two or more persons to accomplish an unlawful plan." *United States v. Woodward*, 459 F.3d 1078, 1083 (11th Cir. 2006). The alleged agreement must be directed toward conduct that actually constitutes wire fraud as a matter of law.

The wire fraud statute prohibits the use of wire facilities to effect "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises.'" *Ciminelli v. United States*, 598 U.S. 306, 312,(2023) (quoting 18 U.S.C. § 1343) (quotation marks and alterations omitted). To prove the existence of a fraudulent scheme, the government must establish: (1) the defendant's "intentional participation in a scheme to defraud, and (2) the use of the interstate wires in furtherance of that scheme." *United States v. Estepa*, 998 F.3d 898, 908 (11th Cir. 2021) (quotation marks and alterations omitted).

Congress did not define a "scheme to defraud" in the statute, leaving the phrase for the courts to interpret. *See United States v. Bradley*, 644 F.3d 1213, 1239-40 (11th Cir. 2011). The Eleventh Circuit has explained that a scheme to defraud exists when a "defendant attempt[s] to obtain, by deceptive means something to which he is not entitled." *Id.* at 1240. *See United States v. Takhalov*, 827 F.3d at 1312 (defendant's "scheme must be a scheme to defraud rather than to do something other than defraud"). The government must allege that the defendant misrepresented, concealed,

or omitted "a material fact calculated to deceive another out of money or property." *United States v. Naranjo*, 634 F.3d 1198, 1207 (11th Cir. 2011) (quoting *United States v. Maxwell*, 579 F.3d 1282, 1299 (11th Cir. 2009)).

In this case, the indictment does not allege conduct that satisfies these elements. Instead, it criminalizes defense advocacy and recasts ordinary defense team communications as fraud. Because the alleged conduct does not constitute wire fraud as a matter of law, the Section 1349 conspiracy charge fails as well.

### B.   The Indictment Fails to Allege Essential  Elements of Wire Fraud

The indictment fails to allege any material misrepresentation or any promise made in furtherance of a valid criminal offense objective. Instead, it relies entirely on the conclusory assertion that Mr. Hernandez "promised" substantial sentence reductions that did not materialize. *See* Indictment at 5.  That is not enough to plead a scheme to defraud, it is not even enough to plead a misrepresentation.

To state a wire fraud offense, the government must allege a scheme to defraud that includes a material misrepresentation made with intent both to deceive and to cheat. *Bradley*, 644 F.3d at1238.   A misrepresentation is material only if it has a natural tendency to influence, or is capable of influencing, the decision maker to whom it is addressed. Ma*xwell*, 579 F.3d at 1299. Critically, the alleged deception must go to the nature of the bargain itself, not merely to a collateral matter or to dissatisfaction with how the transaction turned out. *Takhalov*, 827 F.3d at1313.

Here, the indictment does not come close to meeting that standard. It does not identify a single statement that is allegedly false. It does not quote, paraphrase, or

describe what Mr. Hernandez actually said. It does not allege when any statement was made, to whom it was made, or in what context. Instead, the government repeatedly invokes the word "promised" as a substitute for factual allegations.

Such tactics are not legally sufficient pleading, but evasion. The government cannot avoid its obligation to allege a material misrepresentation by attaching a label to unidentified conversations and inviting the Court to accept its characterization in place of facts. Whether a statement constitutes fraud depends entirely on its content and context. Without the words themselves, there is nothing to evaluate, no basis to determine falsity, no way to assess materiality, and no facts from which intent to defraud can be inferred. The absence of any alleged statement is not a minor pleading defect, rather, it is a complete failure to allege an essential element of the offense. *See Russell v. United States*, 369 U.S. 749, 763 (1962).

The government's theory collapses under scrutiny. At most, the indictment alleges that clients paid for criminal defense assistance, discussed cooperation and potential sentencing outcomes with the defense team, and did not ultimately receive the reductions they hoped for. That is not fraud. It is dissatisfaction with the outcome of legal representation. The federal fraud statutes do not criminalize unmet expectations, unsuccessful advocacy, or predictions that fail to materialize.

The government attempts to bridge this gap by recasting inherently contingent, forward looking discussions as categorical "promises." But the indictment itself forecloses that theory. It expressly acknowledges that only federal prosecutors have the authority to seek substantial-assistance reductions. *See* Indictment at 5. Any

discussion of such outcomes is therefore necessarily contingent on third-party discretion. Absent an allegation that Mr. Hernandez falsely claimed authority he did not possess or fabricated an existing fact, there can be no material misrepresentation as a matter of law.

Nor does the indictment allege facts supporting an intent to defraud. It does not allege that Mr. Hernandez knew any statement was false when made, intended to cheat clients out of money, or engaged in conduct designed to deprive them of the benefit of their bargain. Allegations that a hoped for result was not achieved does not establish fraudulent intent. *See Maxwell*, 579 F.3d at 1301. The indictment substitutes outcome for intent, inference for fact, and conclusion for allegation.

Indeed, the indictment affirmatively establishes that the alleged clients received exactly what they sought: legal assistance in exploring cooperation and pursuing mitigation. That is the nature of the bargain. As the Eleventh Circuit made clear in *Takhalov*, even intentional deception is insufficient where the alleged victims "received exactly what they paid for." 827 F.3d at 1314. Here, the government does not even allege deception about the nature of the bargain, only dissatisfaction with the result.

In *Takhalov*, the defendants were a group of bar owners who had hired women to pose as tourists and lure visiting businessmen into their bars and nightclubs. *Id.* at 1310. Once inside, the men purchased drinks and services at inflated prices. *Id.* The defendants admitted they hired the women to lure the men into the clubs, but argued that there was no fraud because the men received the drinks and services they paid for. *Id.* at 1311. The defendants were nevertheless convicted of wire fraud.

-10-

The Eleventh Circuit reversed holding that

> A jury cannot convict a defendant of wire fraud . . . based on "misrepresentations amounting only to deceit." Thus, even if a defendant lies, and even if the victim made a purchase because of that lie, a wire-fraud case must end in acquittal if the jury nevertheless believes that the alleged victims "received exactly what they paid for."

*Id.* at 1314 (citation omitted). The Court drew a critical distinction between deception and fraud. It held that a scheme to defraud requires a misrepresentation that goes to the nature of the bargain, that is, what the victim is actually receiving in exchange for his money. Deception about collateral matters, even if intentional, is insufficient.

This case falls squarely within the rule articulated in *Takhalov*. Here, the drug traffickers received exactly what they paid for: legal representation that included assistance in pursuing cooperation based sentencing mitigation. That was the nature of the bargain. The indictment alleges that Mr. Hernandez, acting as part of a defense team, discussed cooperation strategies, potential sentence reductions, and mitigation options with clients facing federal prosecution. *See* Indictment at 7. That is precisely the service the clients sought, to explore and pursue avenues for reducing their sentencing exposure through cooperation.

The indictment does not allege that Mr. Hernandez misrepresented what he was providing. It does not allege that he promised a guaranteed result, claimed authority to control prosecutorial decisions, or falsely stated that any reduction had already been approved. It fails to even allege that he did not attempt to provide such assistance. Instead, it alleges only that the legal team's assistance, including that provided by paralegal Hernandez, was not successful because the clients did not obtain

the  hoped for result – a sentence reduction.  Unsuccessful promises are not material misrepresentations.

Ultimately, the indictment asks the Court to accept a fraud theory without a misrepresentation, without identified statements, and without facts supporting intent to defraud. That is not sufficient as a matter of law. Because the government has failed to allege a legally cognizable object offense, the conspiracy charge under 18 U.S.C. § 1349 necessarily fails as well. An agreement to engage in conduct that is not criminal cannot sustain a conspiracy charge.

The Indictment does not allege fraud. It alleges a conclusion. That is not enough. Dismissal is required.

C.     **The Government's Theory Criminalizes Core Defense Team  Activity in Violation of Sixth Amendment**

The indictment does not merely fail to allege the elements of wire fraud, it also advances a theory that would criminalize the ordinary work of a criminal defense team. By recasting routine discussions about cooperation, sentencing exposure, and mitigation strategy as fraudulent "promises," the government seeks to transform core defense activity into a federal crime without ever alleging the words that supposedly crossed that line.

That is not a permissible application of the wire fraud statute.  The Sixth Amendment guarantees not only the right to counsel, but the effective functioning of the defense team within the adversarial system. *See Powell v. Alabama*, 287 U.S. 45 (1932). That protection extends to agents of counsel, including paralegals, who assist in preparing defense strategy and communicating with clients. *United States v.*

*Nobles*, 422 U.S. 225, 238–39 (1975). The indictment itself places Mr. Hernandez squarely within that protected role. *See* Indictment at 7.

The problem is not simply that the government's theory is overbroad, it is that it is untethered to any factual allegation of wrongdoing. The indictment never identifies a statement that crossed from advocacy into fraud. Instead, it relies on the conclusory label "promised" to convert inherently contingent, forward looking discussions into categorical guarantees. That move does all the work of the indictment and it does so without facts.

That is constitutionally impermissible. Defense teams routinely advise clients regarding cooperation, evaluate potential substantial assistance reductions, discuss potential sentencing outcomes and, assist in gathering information that may support mitigation efforts. These discussions inherently involve predictions about future discretionary decisions controlled by the government itself. They are not guarantees of outcome and they are not representations of existing fact. They are the essence of defense advocacy.

For this advocacy, defense attorneys and their teams charge legal fees, sometimes substantial ones, and that representation is protected by the Sixth Amendment. *See United States v. Velez*, 586 F.3d 875, 879 (11th Cir. 2009)(fees to secure criminal defense representation protected by Sixth Amendment). The indictment nevertheless attempts to convert this protected, fee based criminal defense representation into criminal conduct by invoking the conclusory label that paralegal Hernandez "promised" sentence reductions that were not ultimately obtained. But the

government never alleges what was actually said. It substitutes characterization for fact and asks the Court to infer fraud from an outcome.

The theory goes further still. By repeatedly pairing the allegation of "promises" with the collection of fees, the indictment implicitly suggests that it is improper, if not criminal, for a defense team to charge significant compensation for pursuing cooperation and mitigation strategies. That implication is untenable. Criminal defense representation, particularly in complex, high exposure cases involving international defendants and potential cooperation, routinely commands substantial fees. Those fees compensate for time, expertise, strategic judgment, and the inherent uncertainty of outcomes that are ultimately controlled by the government itself.

The government cannot transform the size of a fee, or the failure of a hoped for result, into evidence of fraud. Nor can it criminalize advocacy by reframing compensated defense work as a "scheme" simply because the client later claims dissatisfaction. To hold otherwise would place defense counsel and their teams at risk of prosecution whenever a client pays for representation that does not yield the desired outcome, an outcome that is, by definition, beyond the defense team's control.

Under the government's theory any such discussion becomes a potential felony if the hoped for outcome does not materialize. A prediction becomes a "promise." A failed strategy becomes "fraud." And a dissatisfied client becomes a cooperating witness. That is not the law. Fraud liability cannot be premised on nonperformance, failed predictions, or the inability to influence discretionary government action. *See . Maxwell*, 579 F.3d at 1301 (fraud cannot be inferred solely from the failure of a

venture).

The consequences of that theory are profound. Defense teams would be forced to temper or avoid candid discussions about cooperation for fear that unsuccessful outcomes could later be recast as criminal misrepresentations. The adversarial process would be distorted, and the free flow of communication between defense teams and defendants would be chilled. The Sixth Amendment does not permit such a result.

Courts must construe criminal statutes to avoid such constitutional infirmities. Here, the government's theory depends entirely on relabeling defense communications as "promises" without alleging what was actually said. That is not a narrowing construction of the statute, it is an expansion that intrudes directly into the protected sphere of the defense function. *See Takhalov*, 827 F.3d at 1313–14 (warning against construing fraud statutes to reach conduct that does not involve deception about the nature of the bargain).

This defect is not incidental, it is the foundation of the indictment's theory of liability. Where a prosecution rests on criminalizing core defense activity without alleging any concrete misrepresentation, dismissal is required. The Constitution does not permit the government to convert the defense function itself into the alleged fraud.

## D.    Government's Theory Impermissibly Weaponizes Privileged Communications

The indictment's theory fails for an independent and equally fundamental reason because it weaponizes the attorney–client relationship by converting protected defense communications into the alleged fraud itself. The purported "scheme" is not based on conduct external to the defense function, it is built entirely from

communications between members of a defense team and their clients concerning cooperation, sentencing exposure, and mitigation strategy.

The indictment, however, never identifies those communications. It does not quote them, paraphrase them, or describe their substance. Instead, it replaces them with the government's after the fact characterization that they were "promises." That substitution is not incidental, it is essential to the government's theory. By withholding the actual words, the government avoids the only inquiry that matters – whether any statement constituted a materially false representation of fact. In its place, the indictment offers a label.

Such reliance on a general label is not proper pleading, rather, it is a mechanism for transforming privileged communications into criminal allegations without exposing them to scrutiny. Without the words themselves, there is no way to determine whether the statements at issue were predictions, strategic advice, or contingent discussions about discretionary outcomes. The government's theory thus rests on an evidentiary void filled only by characterization.

Courts have long recognized that the right to counsel encompasses not only the attorney, but the defense team as a whole, including agents such as paralegals and investigators who facilitate communication and strategy. *See Nobles*, 422 U.S. at 238–39. The ability of defense teams to engage in candid discussions with clients regarding cooperation, sentencing possibilities, and strategic options is essential to the adversarial process. If those communications can later be recharacterized as criminal conduct based solely on a cooperating witness's retrospective interpretation, then the

-16-

protection afforded by the Sixth Amendment becomes illusory.

The government's theory in the indictment invites precisely that result. It allows the prosecution to transform protected defense communications into alleged fraud simply because a former client, dissatisfied with the outcome and aligned with the government, adopts the label "promise." That is not a limiting principle but an open ended invitation to criminalize the defense function in violation of the Sixth Amendment.

This defect is compounded by the government's dual role. The same United States Attorney's Office that prosecuted the alleged "victims," controlled the cooperation process, and exercised exclusive discretion over whether any sentencing benefit would be granted, now seeks to criminalize defense communications about that very process. The government thus first defines and controls the outcome of the discussions, and then uses the absence of that outcome to characterize those discussions as fraudulent.[3]

This inversion is constitutionally intolerable. The government cannot both monopolize the only mechanism by which a sentence reduction may occur and then prosecute defense team members for failing to achieve that result particularly where the alleged "fraud" consists solely of communications about that process. Nor can it convert its own discretionary decisions into the factual predicate for a criminal charge.

---

[3]/Indeed, the same Assistant United States Attorney who prosecuted the drug-trafficking clients represented by the defense team on which Mr. Hernandez served as a paralegal now attempts to recast those defendants as "victims" of that very defense team, arising out of the same plea negotiations the government itself directed and controlled.

-17-

The indictment's reliance on conclusory labels such as "promised" is what allows this theory to proceed at all. By refusing to allege the content of the communications, the government shields its theory from scrutiny and asks the Court to accept characterization in place of fact. But without identified statements, there is no misrepresentation. Without a misrepresentation, there is no fraud. What remains is an accusation built on hindsight and dissatisfaction, not a legally cognizable offense.

The consequences of accepting this theory would be far reaching. Any client dissatisfied with the outcome of a case could, upon cooperating with the government, recast routine defense communications as fraudulent. Defense teams would be forced to guard every conversation, dilute candid advice, and avoid meaningful discussions about cooperation and sentencing exposure, not because such discussions are improper, but because they could later be used as the basis for prosecution.

That is precisely what the Sixth Amendment forbids. The Constitution protects the ability of defense teams to communicate candidly with their clients, free from the risk that those communications will later be repurposed as criminal evidence. The government's theory turns that protection on its head.

Because the Indictment depends on weaponizing the attorney–client relationship, replacing factual allegations with conclusory labels, and leveraging the government's own control over outcomes to manufacture a fraud theory, it fails as a matter of law. The Constitution does not permit such a prosecution. Dismissal is required.

## CONCLUSION

For all of these reasons, the indictment fails to allege conduct that constitutes wire fraud as a matter of law and rests on a theory that impermissibly criminalizes protected defense activity and weaponizes the attorney–client relationship. Because the government has not charged a legally cognizable offense, the indictment must be dismissed.

Respectfully submitted,

**PIÑERA-VAZQUEZ LAW FIRM**
901 Ponce De Leon Blvd
Suite 400
Coral Gables, Fl. 33134
Tel:  (305) 443-0629
Fax: (305) 377-3030

  /s/ Silvia B. Piñera-Vazquez
Silvia B. Piñera-Vazquez
sbp@pineravazquezlaw.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on March 25, 2026, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF. [4]

  /s/ Silvia B. Piñera-Vazquez
Silvia B. Piñera-Vazquez, Esq.

---

[4]/ Undersigned counsel conferred with AUSA Dan Baeza who conveyed that the government opposed this motion to dismiss.