APR 9 2026 PM2:35
FILED - USDC - FLMD - TPA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.

CASE NO.  8:25-cr-327-WFJ-AAS
18 U.S.C. § 1349
(Wire Fraud Conspiracy)
18 U.S.C. § 1956
(Money Laundering
Conspiracy)

JORGE LUIS HERNANDEZ VILLAZON
    a/k/a "Boli,"
    a/k/a "Boliche"
JUAN CARLOS CERCHIARO CALDERA
    a/k/a "Caruca"
    a/k/a "Karuka"
    a/k/a "Caru"

## SUPERSEDING INDICTMENT

The Grand Jury charges:

## COUNT ONE
### (Conspiracy to Commit Wire Fraud)

### A. Introduction

At times material to this Indictment:

1.    Defendant JORGE LUIS HERNANDEZ VILLAZON

(HERNANDEZ VILLAZON) was a resident of the Southern District of Florida.

2.    Defendant JUAN CARLOS CERCHIARO CALDERA

(CERCHIARO CALDERA) was a Colombian national residing in the Republic of

Colombia. CERCHIARO CALDERA became a fugitive following the arrest of

HERNANDEZ VILLAZON.

3.    Jose Suarez Castillo was a Colombian national residing in the Republic of Colombia.

4.    Coconspirator 1 was a Colombian national residing in the Republic of Colombia.

5.    Coconspirator 2 was a Colombian national residing in the Republic of Colombia.

6.    Coconspirator 3 was a Colombian national residing in the Republic of Colombia.

7.    Coconspirator 4 was a resident of the Southern District of Florida.

**B.    The Conspiracy**

Beginning at least as early as in or around November 2020, and continuing through the date of the indictment, in the Middle District of Florida and elsewhere, the defendant,

JORGE LUIS HERNANDEZ VILLAZON,
a/k/a "Boli,"
a/k/a "Boliche,"

did knowingly and willfully combine, conspire, confederate, and agree with others, both known and unknown to the Grand Jury, to commit certain offenses, to wit, to execute and attempt to execute a scheme and artifice to defraud, and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, by transmitting and causing to be transmitted by means of wire communications in interstate and foreign commerce, writings, signs, signals,

pictures, and sounds for the purpose of executing such scheme and artifice, in violation of 18 U.S.C. § 1343.

All in violation of 18 U.S.C. § 1349.

### B.     Substantial Assistance Motions and Sentence Reductions

8.      Section 5K1.1 of the United States Sentencing Guidelines ("5K1.1") and Rule 35 of the Federal Rules of Criminal Procedure ("Rule 35") set forth the procedures by which a United States District Court could reduce a federal defendant's sentence for providing substantial assistance to the United States. In particular, 5K1.1 authorized the United States to file a *pre-sentence* motion to reduce the defendant's sentencing guidelines range if the defendant provided substantial assistance in the investigation or prosecution of another person. Typically, a decrease in a defendant's sentencing guidelines range resulted in a reduced sentence for the defendant. Rule 35, on the other hand, authorized the United States to file a *post-sentence* motion to reduce a defendant's sentence for providing substantial assistance to the United States in the investigation or prosecution of another person.

9.      The United States Attorney's Office for the Middle District of Florida (hereinafter the "USAO MDFL")—the federal prosecuting authority in the Middle District of Florida—had the authority to determine whether a defendant provided substantial assistance to the United States and whether to file a motion to reduce the defendant's sentence pursuant to 5K1.1 or Rule 35. Typically, before filing a 5K1.1 or Rule 35 motion to reduce a defendant's sentence, the USAO MDFL required the

defendant to personally provide substantial assistance to the United States in its investigation or prosecution of another person for committing a crime. Accordingly, in the usual case, a defendant would personally provide substantial assistance to the United States and, as a reward for that assistance, the USAO MDFL would file a 5K1.1 or Rule 35 motion with the United States District Court for the Middle District of Florida (hereinafter the "U.S. District Court") to reduce the defendant's sentence.

10.     With the approval of the USAO MDFL, however, a defendant could earn substantial assistance credit through the use of a third-party cooperator. Third-party cooperation was different from typical cooperation efforts because the defendant was not personally involved in providing substantial assistance to the United States. Instead, another person, referred to as the "third-party cooperator," assisted the United States on behalf of the defendant. Usually, a third-party cooperator was a spouse, girlfriend, boyfriend, close friend, or family member of the defendant. In exchange for substantial assistance provided by the third-party cooperator for the benefit of the defendant, the USAO MDFL would file a 5K1.1 or Rule 35 motion with the U.S. District Court to reduce the defendant's sentence. If the USAO MDFL discovered that there was no legitimate relationship between the defendant and the third-party cooperator, the USAO MDFL would not authorize the third-party cooperation effort or give the defendant any credit for that effort.

11.     Pursuant to the USAO MDFL's policy, the third-party cooperator could not receive any personal benefit for providing substantial assistance to the United States.  For example, the United States would not pay a fee to, reduce the prison sentence of, decline to charge, or drop charges against the third-party cooperator.  Rather, the defendant received the benefit for the substantial assistance provided by the third-party cooperator.  Pursuant to the USAO MDFL's policy, the use of a third-party cooperator would not be authorized if the defendant or someone acting on the defendant's behalf paid or promised to pay the third-party cooperator for his assistance.  If the USAO MDFL discovered that a third-party cooperator had been paid a fee or promised payment of a fee for his efforts to earn a 5K1.1 or Rule 35 sentence reduction for a particular defendant, the USAO MDFL would refuse to file a substantial assistance motion for that defendant.

12.     Without the filing of a 5K1.1 motion by the USAO MDFL, the U.S. District Court did not have the authority to depart downward from a defendant's sentencing guidelines range based on substantial assistance, and without the filing of a Rule 35 motion by the USAO MDFL, the U.S. District Court did not have the authority to reduce a defendant's sentence based on substantial assistance to the United States.

### C.     Manner and Means of the Scheme

13.     Beginning at least as early as in or around September 2020, HERNANDEZ VILLAZON promised international drug traffickers facing

5

extradition and prosecution in the United States substantial reductions in their potential sentences in exchange for payments in upwards of the equivalent of $2,000,000 United States dollars (USD). These promises of substantial sentence reductions were false and HERNANDEZ VILLAZON knew them to be false, yet he continued to collect substantial fees, at times unbeknownst to the legal teams for these drug traffickers.

14.    The manner and means by which HERNANDEZ VILLAZON sought to accomplish the scheme included, among others, the following:

a.  It was part of the conspiracy that HERNANDEZ VILLAZON solicited drug traffickers facing prosecution in the Middle District of Florida, Southern District of Florida, and District of Puerto Rico and promised substantial sentence reductions in exchange for payments that were equivalent to about $2,000,000 USD;

b.  It was further part of the conspiracy that HERNANDEZ VILLAZON made these agreements outside of the fee agreements for legal representation in the United States;

c.  It was further part of the conspiracy that HERNANDEZ VILLAZON and Coconspirator 1 instructed drug traffickers and their families to pay in the form of cash, real property, and cars;

d.  It was further part of the conspiracy that CERCHIARO CALDERO and Jose Suarez Castillo received cash, title to real property, and cars

from drug traffickers and their families in Colombia as payment for the service HERNANDEZ VILLAZON promised;

e. It was further part of the conspiracy that transactions for cash, title to real property, and vehicles would, at times, be in the names of third-parties;

f. It was further part of the conspiracy that cash and the proceeds of the sales of real property and vehicles would be transmitted by wire to the United States and that HERNANDEZ VILLAZON would receive proceeds of those sales to bank accounts under his control;

g. It was further part of the conspiracy that conspirators received cash and other things of value that were the proceeds of drug trafficking or derived from the proceeds of drug trafficking, and conspirators knew that they were the proceeds of drug trafficking or derived from the proceeds of drug trafficking;

h. It was further part of the conspiracy that HERNANDEZ VILLAZON maintained a network of people in Colombia known as "sub-sources" who provided him with information about drug smuggling. HERNANDEZ VILLAZON paid these sub-sources for information;

i. It was further part of the conspiracy that HERNANDEZ VILLAZON offered to use these sub-sources to supply information about drug smuggling to potential third-party cooperators.

j. It was further part of the conspiracy that the sources of information for these potential third-party cooperators were not intended to be

7

disclosed to federal law enforcement officers, federal prosecutors, and federal district court officers;

k.  It was further part of the conspiracy that HERNANDEZ obtained certification as a paralegal in order to meet with traffickers in jails, including within the Middle District of Florida;

l.  It was further part of the conspiracy that HERNANDEZ VILLAZON knew that third-party cooperation was not approved for the drug traffickers to whom he promised substantial sentence reductions, yet he continued to demand payment for services not rendered;

m. It was further part of the conspiracy that HERNANDEZ VILLAZON and others would threaten drug traffickers and their families if payments were not rendered;

n.  It was further part of the conspiracy that the use of wire communications in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing the scheme and artifice occurred in the Middle District of Florida and elsewhere;

o.  It was further part of the conspiracy that Coconspirator 4 and others solicited legal action against potential witnesses to discredit them before trial;

p.  It was further part of the conspiracy that the conspirators and others would and did perform acts and make statements to hide and conceal and

cause to be hidden and concealed the purposes of the conspiracy and the acts committed in furtherance thereof.

## COUNT TWO
### (Money Laundering Conspiracy)

15.    Paragraphs 1 through 14 of this Superseding Indictment are realleged and incorporated as though set forth herein.

16.    The Sixth Amendment to the United States Constitution guarantees a defendant in a criminal case to the effective assistance of counsel. Often, this involves a defendant retaining the counsel of their choice. Retaining a private attorney, however, is expensive and can require substantial fees depending on the complexity of the case.

17.    There is a Sixth Amendment right to the effective assistance of counsel; there is no such right, however, to use criminally-derived assets to retain counsel. Such assets are subject to forfeiture at the moment they are created; therefore, assets derived from criminal activity and then used to pay for an attorney may be subject to forfeiture under the laws of the United States even though the attorney would be the holder of those assets.

18.    As a general rule, attorneys representing defendants in criminal cases take measures to prevent the payment of legal fees with criminally-derived assets, requiring verification from clients and others paying legal fees on the clients' behalf that payments remitted to them come from legitimate sources.

19. The defendant, HERNANDEZ VILLAZON, solicited international drug traffickers facing prosecution in the United States to pay him and attorneys substantial fees, quoting as much as $2 million. JORGE LUIS HERNANDEZ VILLAZON accepted such payments from drug traffickers and their families in the form of cash, vehicles, jewelry, and real property

## A. The Conspiracy

20. Beginning on an unknown date, but at least as early as in or around September 2020, and continuing through the date of the Superseding Indictment, in the Middle District of Florida and elsewhere, the defendants,

JORGE LUIS HERNANDEZ VILLAZON,
a/k/a "Boli,"
a/k/a "Boliche," and
JUAN CARLOS CERCHIARO CALDERA,
"Caruca,"
"Karuka,"
"Caru,"

did knowingly combine, conspire, and agree with each other and other persons, both known and unknown to the Grand Jury, to commit offenses against the United States, in violation of 18 U.S.C. § 1956, that is:

a. to conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which transactions involved the proceeds of a specified unlawful activity, that is, importation of controlled substances, in violation of 21 U.S.C. § 959, and conspiracy to import controlled substances, in violation of 21 U.S.C. § 963, knowing that the transaction was designed in whole or in part to

10

conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity and knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(B)(i);

b.    to transport, transmit, transfer, and attempt to transport, transmit, and transfer monetary instruments and funds involving the proceeds of specified unlawful activity, that is, importation of controlled substances, in violation of 21 U.S.C. § 959, and conspiracy to import controlled substances, in violation of 21 U.S.C. § 963, from a place in the United States to a place outside the United States, knowing that said monetary instruments and funds represent the proceeds of some form of unlawful activity and knowing that such transportation, transmission, and transfer is designed in whole or in part to conceal and disguise the nature, location, the source, the ownership, and the control of the proceeds of a specified unlawful activity, that is, the unlawful importation of controlled substances, in violation of 21 U.S.C. § 959, and conspiracy to import controlled substances, in violation of 21 U.S.C. § 963, in violation of 18 U.S.C. § 1956(a)(2)(B)(i); and

c.    to transport, transmit, transfer, and attempt to transport, transmit, and transfer monetary instruments and funds from a place outside the United States to a place to and through the United States, with the intent to promote the carrying on of specified unlawful activity, to wit, wire fraud and conspiracy to commit wire fraud in violation of 18 U.S.C. §§ 1349 and 1343, in violation of 18

11

U.S.C. § 1956(a)(2)(A).

All in violation of 18 U.S.C. § 1956(h), (f).

### C. Manner and Means of the Conspiracy

21.    The manner and means by which the conspirators sought to accomplish the objects of the conspiracy included, among others, the following:

a.    It was part of the conspiracy that the conspirators would and did solicit international drug traffickers facing prosecution in the United States to pay in upwards of $1 million that was purported to be legal fees;

b.    It was further part of the conspiracy that the conspirators collected cash, real property, vehicles, jewelry, and other things of value in Colombia to cover the costs of these purported legal fees;

c.    It was further part of the conspiracy that the conspirators knew that the cash, real property, vehicles, jewelry, and other things of value received from international drug traffickers and their families were the proceeds of drug trafficking and derived from the proceeds of drug trafficking;

d.    It was further part of the conspiracy that the conspirators conducted transactions in the names of third-parties to conceal the source, origin, ownership, and control of the proceeds of drug trafficking;

e.    It was further part of the conspiracy that payments collected in Colombia would then be transferred to the United States;

12

f.    It was further part of the conspiracy that the conspirators and others would and did perform acts and make statements to hide and conceal and cause to be hidden and concealed the purposes of the conspiracy and the acts committed in furtherance thereof.

All in violation of 18 U.S.C. § 1956(h).

## FORFEITURE

1.    The allegations contained in Counts One and Two are incorporated by reference for the purpose of alleging forfeiture pursuant to the provisions of 18 U.S.C. §§ 981(a)(1), 982 and 28 U.S.C. § 2461(c).

2.    Upon conviction of a violation of 18 U.S.C. § 1349, the defendants shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property constituting, or derived from, any proceeds the defendants obtained, directly or indirectly, as a result of such violation.

3.    Upon conviction of a violation of 18 U.S.C. § 1956, the defendants shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, involved in such offense, and any property traceable to such property.

4.    The property to be forfeited includes, but is not limited to, the following: $4,100,000, which represents proceeds of the violations and/or property involved in the violations.

5.    If any of the property described above, as a result of any acts or omissions of the defendants:

13

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred or sold to, or deposited with, a third party;

c.   has been placed beyond the jurisdiction of the Court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property, which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c).

A TRUE BILL.

_____
Foreperson

GREGORY W. KEHOE
United States Attorney

By: _____
Dan Baeza
Assistant United States Attorney
Chief, National Security and International Narcotics

By: _____
Christopher F. Murray
Assistant United States Attorney
Chief, Criminal Division – South

14

FORM OBD-34

April 26

No. 8:25-cr-327-WFJ-AAS

## UNITED STATES DISTRICT COURT
Middle District of Florida
Tampa Division

### THE UNITED STATES OF AMERICA

vs.

JORGE LUIS HERNANDEZ VILLAZON   a/k/a "Boli," a/k/a "Boliche"
JUAN CARLOS CERCHIARO CALDERA a/k/a "Caruca", a/k/a "Karuka", a/k/a "Caru"

### SUPERSEDING INDICTMENT

Violations: 18 U.S.C. § 1349; 18 U.S.C. § 1956

A true bill.



_____
Foreperson

Filed in open court this 9th day

of April, 2026.

_____
Clerk – Karina Nieves

Bail $_____

GPO 863 525