UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                          CASE NO. 8:25-cr-327-WFJ-AAS

JORGE LUIS HERNANDEZ VILLAZON

**RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS**

When stripped of its hyperbole, the defendant's motion to suppress presents a very simple question: Can federal investigators investigate a potential new crime by recording a meeting when one party to the conversation consents to the recording? The answer is, and always has been, "yes." This basic and elementary principle of investigation is fatal to the defendant's motion, and it should be denied on that basis alone.

But denial of the motion is also appropriate because it does not state a cognizable ground for suppression. Though claiming violations of Hernandez's due process rights and his right to counsel, the motion both lacks the specificity to advance it beyond just mere allegations and the case law required to support its position. Pre-indictment, non-custodial, and covert investigative contacts with a represented party unrelated to the original charged conduct are appropriate law enforcement activities, not outrageous government conduct or entrapment. The defendant is not entitled to special treatment, and the Court should recognize none here.

## Procedural and Factual Background

### A. Procedural Background

The defendant is charged in a two-count superseding indictment for conspiring to commit wire fraud and conspiring to commit money laundering. As described in the charging documents and abundance of filings in this case, the defendant is alleged to have been involved in a multi-year scheme to get substantial payments from drug traffickers facing extradition in exchange for false or unattainable promises of low sentences or no prison time. Members of the conspiracy collected the proceeds of drug trafficking and property purchased with drug proceeds and concealed the same as legal fees.

### B. Investigative Timeline

The Middle District of Florida investigation of Hernandez began in the summer of 2024 when federal agents learned during a proffer of a sentenced defendant, Trafficker 1, that Hernandez promised a sentence below the mandatory minimum—indeed, well below it and served, in part, outside of prison—in exchange for a million dollars. In an interview with a separate trafficker prosecuted in the Middle District of Florida, Trafficker 2, investigators heard of similar promises the defendant rendered in exchange, again, for substantial payments. Records received from family members—to include recorded calls and WhatsApp messages beginning in or around 2020 that defense counsel has had since last year—are corroborative of the defendant's involvement in working on both traffickers' cases as well as making false claims in support of the charged offenses.

After developing these investigative leads, agents learned of similar conduct involving the defendant in other districts. First was the District of Puerto Rico, where agents learned that the defendant solicited Trafficker 3, a Dominican trafficker facing extradition to the United States, with similar claims in 2023. The defendant was sent on behalf of Trafficker 4, who himself was facing extradition to the United States and whom Hernandez's counsel still represents. The defendant claimed that he could use his contacts within the U.S. Attorney's Office and Drug Enforcement Administration to secure a 3-4-year sentence in exchange for $350,000. The money for these legal fees came from Trafficker 4, who admitted that the funds were the proceeds of drug trafficking. According to Trafficker 3, Hernandez made claims that he coordinated a 3-4-year sentence for Trafficker 3 and had a meeting scheduled with the Assistant U.S. Attorney and Trafficker 3's counsel to finalize the plea agreement—Hernandez was never at such a meeting and no such agreement existed.

Middle District of Florida agents next learned of two federal defendants in Miami, interviewing both in May 2025. Trafficker 5 met Hernandez's defense counsel in or around March 2023, saying she was meeting with him on behalf of "Boli" (Hernandez). Later, Trafficker 5 was approached with a contract for representation from counsel's firm for $1,000,000. While these discussions were happening, Hernandez and his wife were in contact with Trafficker 5's wife in Colombia. Hernandez claimed he could help Trafficker 5 by turning people in and other assistance so that Trafficker 5 would not have to do any jail time. When

3

Trafficker 5's wife said they could not afford the fees; Hernandez grew angry and threatened to do everything possible to make sure Trafficker 5 rotted in jail.

Trafficker 6 was the other federal defendant that Middle District of Florida investigators learned about during this period. He is the subject of the current motion.

### C. The Recording

Here is what actually happened.

In January 2024, a Miami federal inmate pending trial (Trafficker 6)[1] reported to law enforcement that Hernandez's counsel, Silvia Pinera, met with him in or around October 2023 at the Federal Detention Center (FDC) in Miami to discuss potential representation; Hernandez was signed in as Pinera's paralegal. Trafficker 6 had known Hernandez for many years, but they were not involved in trafficking narcotics together because Trafficker 6 believed Hernandez to be a liar. Pinera left the room and the defendant offered Trafficker 6 information that could be provided to law enforcement for a potential sentence reduction. This information would be presented as Trafficker 6's own and included a drug-related murder.

On or about February 1, 2024, Hernandez and attorney Pinera came back to the FDC and made an unsolicited visit to Trafficker 6. During that visit, Pinera said that this would be the last time she brought Hernandez to visit him because there had

---

[1] Hernandez identifies Trafficker 6 by name in his motion. This is inexplicable and unwarranted, especially when considering the public scrutiny of this case in Colombia. Though the damage has already been done, the United States nonetheless requests that the Court order defense counsel to file a corrected brief anonymizing Trafficker 6's identity.

been no progress made on representation. She then left the room, leaving Hernandez and Trafficker 6 alone. Again, Hernandez offered to provide Trafficker 6 information, describing that he had done the same in the past for relatives of Trafficker 6 that led to reductions in their sentences. Hernandez asked for $150,000 to give to Pinera in exchange for representation and promised additional information that Trafficker 6 could report as his own. Trafficker 6 responded that he was owed a substantial drug debt and Hernandez offered to help Trafficker 6 collect the debt.

In response to allegations that Hernandez was offering to supply Trafficker 6 with information to reduce his sentence in exchange for substantial fees—and collect a drug debt on Trafficker 6's behalf—investigators took the next logical step: to get evidence of this alleged wrongdoing recorded. And that is what they did. This recording was made with the consent of Trafficker 6 and under monitoring of a DEA special agent.[2] This motion followed.[3]

---

[2] A third-party entered the FDC with Hernandez and, at times, was in the meeting room. Trafficker 6 observed Hernandez to be uncomfortable talking when the third-party was nearby and noted that this was when Hernandez claimed not to sell information.

[3] Despite the claim that the "recording captures Mr. Hernandez repeatedly refusing the very proposal that the government's cooperating defendant continued to advance," Doc. 119 at 10, and a reference to a single excerpt from an approximately 90-minute recording, the lengths Hernandez is going to suppress the recording's contents say all that we need to know about its relevance.

**D. The Defendant's Offense-Specific Representation with Defense Counsel**

During the charged scheme in this case the defendant was cooperating with authorities in the Southern District of New York (SDNY) on money laundering and corruption investigations; his sentence was pending. Defense counsel represented Hernandez in those proceedings. At the time of the challenged recording in this case, the docket in the SDNY case prompting his cooperation was sealed. It has since been unsealed and centered on a pre-2020 conspiracy to launder the proceeds of violations of the Foreign Corrupt Practices Act related to the Venezuelan government. Ex. 1 at 2. He pleaded guilty to a one-count information in that case on January 5, 2021, and was sentenced in the spring of 2024. His next arrest came in June 2025 on a criminal complaint issued out of the Middle District of Florida and he was indicted the following month.

**ARGUMENT**

**HERNANDEZ HAS NOT RAISED FACTS THAT, IF TRUE, AMOUNT TO A VIOLATION OF HIS FIFTH OR SIXTH AMENDMENT RIGHTS**

A motion to suppress must in every critical respect be sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that a substantial claim is presented. *United States v. Richardson*, 764 F.2d 1514, 1527 (11th Cir. 1985) (internal citations omitted). The court may refuse a defendant's motion to suppress and his request for a hearing if he "fails to allege facts that, if proved, would require…relief." *Id*. Therefore, a defendant must allege sufficient particularized facts that a constitutional right was violated. *See United States v. Cooper*, 203 F.3d 1279,

1279 (11th Cir. 2000) ("A court need not act upon general or conclusory assertions.") A court's decision not to hold an evidentiary hearing is reviewed for abuse of discretion. *Id.* at 1285.

### A. The Eleventh Circuit Has Never Applied the Outrageous Government Conduct Defense and This Case Should Be No Different

Hernandez cites two constitutional infractions: his right to due process under the Fifth Amendment and his right to counsel under the Sixth Amendment. The Due Process Clause of the Fifth Amendment protects a defendant on law enforcement tactics employed "to obtain a conviction for conduct beyond the defendant's predisposition." *United States v. Sanchez*, 138 F.3d 1410, 1413 (11th Cir. 1998). To establish such outrageous conduct, a defendant must show that law enforcement's techniques violate "fundamental fairness, shocking to the universal sense of justice…." *United States v. Russell*, 411 U.S. 423, 431-32 (1973).

In practice, neither the Supreme Court nor the Eleventh Circuit have found an example meeting the standard articulated in *Russell*. *See United States v. Sanchez*, 138 F.3d 1410, 1413 (11th Cir. 1998) (stating that the defendant of outrageous government conduct is recognized but the standard has never been met). As the Eleventh Circuit continued its uninterrupted streak of finding no outrageous government conduct in investigations, it began to muse that any discussion of it is no more than "speculative dicta." *See United States v. Ciszkowski*, 492 F.3d 1264, 1272 (11th Cir. 2007) (Carnes, J., concurring); *United States v. Jayyousi*, 657 F.3d 1085, 1111 (11th Cir. 2011) ("We have never applied the outrageous government conduct

defense and have discussed it only in dicta.").

Like the multitude of cases preceding it, this Court should reach the same result as its brethren and find no outrageous government conduct here. Presenting a defendant with an opportunity to commit a crime does not meet that high threshold. *E.g.*, *United States v. Cannon*, 987 F.3d 924, 943 (11th Cir. 2021) (reverse sting operation giving defendants an opportunity to rob a stash house was not outrageous). Indeed, Hernandez does not identify credible evidence supporting that agents provided the entire means of executing the plan and then ran the entire operation. *See United States v. Puett*, 735 F.2d 1331, 1335 (11th Cir. 1984) (stating that government conduct could be outrageous when the government instigates the activity, runs the entire operation, and gives the means to carry it out with minimal assistance from the defendant). On the contrary, Hernandez often boasted—both in the FDC Miami recording and in other evidence—to having informants who could ply him with information for defendants' benefits. In other words, Hernandez was the one with the means to carry out a cooperation scam and approaching him for that purpose is like asking a drug dealer to sell you drugs after the dealer previously offered them to you for sale. It would be a basic and non-controversial investigative method for the latter, and the Court should consider the conduct in this case as kindred.

In the absence of outrageous government conduct, Hernandez's Fifth Amendment claim falls on entrapment. But entrapment is an affirmative defense. *Cannon*, 987 F.3d at 943 (citing *United States v. Orisnord*, 483 F.3d 1169, 1178 (11th Cir. 2007)). It is up to the defendant at trial to show governmental inducement to

8

commit the crime, not just the government soliciting or providing opportunity to commit it. *Orisnord*, 483 F.3d at 1178; *United States v. West*, 898 F.2d 1493, 1502 (11th Cir. 1990). The Court need not devote any more time and attention to entrapment in a motion to suppress.

Hernandez has not raised any facts which, if true, would result in a finding of outrageous government conduct. His due process rights were not violated.

### B. Hernandez's Sixth Amendment Right to Counsel Did Not Attach for the February 29, 2024 Recording Until His Formal Charge in This Case

The Sixth Amendment right to counsel does not attach until a formal charge, preliminary hearing, indictment, information, or arraignment. *Kirby v. Illinois*, 406 U.S. 682 (1972); *Stokes v. Singletary*, 952 F.3d 1567, 1577 (11th Cir. 1992). The right to counsel is "offense specific." *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991). "It cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced…." *Id*. (internal citations omitted). Law enforcement has an interest in investigating new or additional crimes after an individual is formally charged with one crime; to exclude evidence pertaining to other charges for the sole reason that other charges were pending "would frustrate the public's interest" in the investigation of crimes. *Maine v. Moulton*, 474 U.S. 159, 179-80 (1985); *see also United States v. Terzado-Madruga*, 897 F.2d 1099, 1111-12 (11th Cir. 1990). Thus, "[i]ncriminating statements pertaining to other crimes, as to which the Sixth Amendment right has not yet attached, are, of course, admissible at a trial of those offenses." *Id*. at 180, n.16.

It is a basic principle of professional responsibility and criminal investigations that investigators shall not communicate with a represented party *about the subject of the representation* without the consent of counsel or the investigator is otherwise authorized by law to do so. *E.g.*, ABA Model Rules of Prof'l Conduct R. 4.2.[4] This is congruent to the Sixth Amendment's offense-specific right to counsel and was practiced here.

The case where Hernandez's right to counsel was attached with attorney Pinera was his money laundering case in New York. The SDNY case was distinguishable in time, place, manner, and offense to this District's prosecution and the Southern District of Florida's investigation. *See* Ex. 1 at 2 (Hernandez SDNY sentencing memo describing offense conduct). It also involved different offense elements. *See Texas v. Cobb*, 532 U.S. 162, 172-73 (2001) (when right to counsel attaches, it encompasses offenses that, even if not charged, would be considered the same offense under the *Blockburger* test). This clear demarcation is fatal to his motion. Hernandez's selective interchanging of his paralegal and client hats throughout this case to shield responsibility for his conduct is emblematic of why the Sixth

Amendment employs an offense-specific distinction and giving him the relief he seeks here would be at odds with decades of precedent.

---

[4] Florida's Rules of Professional Conduct replicate the ABA Model Rule, with the exceptions that the rule applies to a represented <u>person</u> rather than a <u>party</u> and the "otherwise authorized by law" language is excluded. For purposes of present analysis, these distinctions have no bearing on the outcome here.

These limitations in his position identified, Hernandez nonetheless maintains that he is different. He is not. He did not just get cold-called to come to FDC Miami and be recorded; he had been to the jail before to speak with Trafficker 6. He used his paralegal certification to get in the jail on prior visits and did so in the February recording as well. Authorities in Miami had received information that since at least October 2023, Hernandez was offering information a high-level trafficker could claim as his own to reduce his potential sentence in exchange for substantial payments. This was potential fraud and obstruction of justice. That he was a cooperator for SDNY after pleading guilty does not enshroud him in any special treatment, nor does his revisionist history of how he found himself at FDC Miami on February 29, 2024, carry any weight in the Sixth Amendment analysis.

There is no Sixth Amendment violation because the offense under investigation was distinct from Hernandez's SDNY case and Hernandez's right to counsel had not yet attached in connection with the February 29, 2024 recording.

## Conclusion

Hernandez must allege facts that, if proven, would provide a basis for relief. He has not done so here. Collecting evidence of a potential crime by recording it with the consent of a witness is a basic investigative tactic and does not rise to the level of outrageous government conduct. Hernandez's right to counsel did not attach at the time of the recording either. The motion should therefore be denied.

Respectfully submitted,

GREGORY W. KEHOE
United States Attorney

By:    /s/ *Daniel Baeza*
DANIEL BAEZA
Assistant United States Attorney
USAO No. 164
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602-4798
Telephone:   (813) 274-6000
Facsimile:    (813) 274-6358
E-mail: Daniel.Baeza@usdoj.gov

**U.S. v. Hernandez Villazon**                    **Case No. 8:25-cr-327-WFJ-AAS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 14, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Defense counsel of record


/s/ *Daniel Baeza*
DANIEL BAEZA
Assistant United States Attorney
USAO No. 164
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602-4798
Telephone:   (813) 274-6000
Facsimile:    (813) 274-6358
E-mail: Daniel.Baeza@usdoj.gov

13