UNITED STATES DISTRICT COURT
MIDDLE  DISTRICT OF FLORIDA

CASE NO. 25-cr-00327-WFJ

UNITED STATES OF AMERICA

v.

JORGE LUIS HERNANDEZ VILLAZON,

    Defendant.
_____/

### REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANT'S, JORGE HERNANDEZ, MOTION TO SUPPRESS FDC RECORDED CONVERSATION AND REQUEST FOR EVIDENTIARY HEARING

The government's Response does not defend the operation challenged in defendant's, Jorge Hernandez Villazon, Motion to Suppress FDC Recorded Conversation ("Motion").  It evades it and creates a brand new chronological narrative in an attempt to avoid constitutional  scrutiny.  In doing so, the government confirms the need for an evidentiary hearing.

Contrary to the government's characterization, the  Motion does not contend that every consensual recording is unlawful or ask whether investigators may ordinarily record a conversation with the consent of one participant. It challenges this particular government engineered operation where agents used an incarcerated cooperator and his attorney to create and control an encounter inside a federal detention center that targeted Mr. Hernandez while he was a represented defendant awaiting sentencing and an active federal cooperator with multiple jurisdictions.

The government then used the resulting recording as the foundation for the investigation that followed. *See* ECF No. 119 at 6–16. Rather than address that

challenge, the government substitutes an abstract question no one asked: whether investigators may generally record a conversation with one participant's consent. *See* ECF No. 124 at 1.

More troubling, when confronted with the chronology established by its own charging documents and discovery, the government simply adds new facts and creates a new investigative narrative. For the first time, the Response reveals an October 2023 to February 2024 chronology that appears nowhere in the Complaint, the Superseding Indictment, or the discovery produced to the defense. According to this newly constructed account, an inmate at FDC made allegations in January 2024 and unidentified "authorities in Miami" then arranged the February 29, 2024, recording as the supposed "next logical step." *Id.* at 4–5, 11. The government has never supplied any report, declaration, FDC records, or other evidence supporting that account. When cornered by the absence of a disclosed investigative predicate preceding the FDC recording, the government attempts to manufacture one through attorney argument in its Response.[1]

The government then compounds the diversion by injecting undersigned counsel into its narrative through inflammatory allegations concerning legal fees and unrelated representations. *See id.* at 4–5, 10. Those accusations are a red herring. Defense counsel is not the subject of the Motion, and a proposed fee in an unrelated matter has no bearing on who initiated, planned, authorized, or controlled the

_____

[1]/ The new narrative is unsworn, vigorously disputed, and internally inconsistent.

February 29 operation. The gratuitous references to counsel do not answer what the FDC inmate was instructed to propose, why he attempted to entrap Mr. Hernandez , or which governmental office directed the encounter. Their evident purpose is to smear defense counsel and distract from the government's inability to answer the constitutional challenge on the disclosed record.

The government cannot withhold an alleged investigative predicate from the charging documents and discovery, create a materially different chronology when challenged, and then ask the Court to accept that new account without scrutiny. The Response's newly created narrative does not defeat the Motion. It raises serious disclosure concerns and constitutional questions regarding the government's conduct in this investigation and confirms that an evidentiary hearing is necessary.

REPLY

### A. The Government Mischaracterizes the Question Presented

The government begins with a straw man. It declares that the Motion presents a "very simple question" – whether investigators may record a conversation when one participant consents. ECF No. 124 at 1. But Mr. Hernandez does not allege a wiretap violation, dispute the general one party consent rule, or claim that consensual recordings are categorically unlawful. He challenges the methods the government used to create this particular encounter and manufacture the evidence it now seeks to use.

Consent may answer whether the interception violated a wiretap statute. It does not answer whether the government's conduct, viewed in its totality, comported with due process. *See United States v. Russell*, 411 U.S. 423, 431–32 (1973); *United States*

-3-

*v. Haimowitz*, 725 F.2d 1561, 1577 (11th Cir. 1984).

Mr. Hernandez's Motion alleges that the government, without any disclosed predicate, targeted a represented defendant who was awaiting sentencing and actively cooperating with federal authorities in multiple jurisdictions. *See* Exhibit A to Mot. to Suppress. The government exploited Mr. Hernandez's known work as a paralegal on federal defense teams[2] by using a cooperating inmate and his attorney to initiate contact and by directing the inmate to steer the conversation to potentially unlawful conduct, even after Mr. Hernandez repeatedly rejected the proposals. ECF No. 119 at 3–10, 14–16. The recording preceded the witness interviews upon which the government later built this prosecution. *Id.* at 7–8.

Those circumstances cannot be reduced to the abstract legality of a consensual recording. They require examination of who initiated the operation, who supplied its means, what the cooperator was instructed to propose, whether Mr. Hernandez participated willingly, and what he did when presented with the government's proposal. *See United States v. Cannon*, 987 F.3d 924, 943–44 (11th Cir. 2021)(entrapment defense). The government avoids that analysis because the known facts do not support its characterization of the encounter as routine evidence collection.

The Response also refuses to confront what the recording actually captures. The inmate repeatedly introduced secret third party cooperation and Mr. Hernandez repeatedly rejected it, stating unequivocally: "Yo no vendo positivos a nadie"—"I don't

---

[2] The Superseding Indictment acknowledges that Mr, Hernandez "obtained certification as a paralegal."  ECF. No. 78 at 8.

-4-

sell positives [cooperation] to anyone." ECF No. 119 at 9–10. The government does not deny that statement. Instead, it speculates that Mr. Hernandez refused because a third person was nearby and suggests that his effort to suppress the recording somehow proves its relevance. ECF No. 124 at 5 nn.2–3. The first is an untested credibility assertion; the second improperly treats the invocation of a constitutional remedy as evidence of guilt. Neither answers the Motion.

The government's reliance on the offense specific nature of the Sixth Amendment is equally beside the point. Mr. Hernandez does not dispute that the right to counsel is offense specific. But that principle does not resolve his independent due process challenge or render his represented and cooperating status irrelevant to the totality of the circumstances. *Moulton* does not grant law enforcement unlimited authority to use any method to obtain statements concerning an uncharged offense. *See Maine v. Moulton*, 474 U.S. 159, 180 (1985)(the government's investigative powers are limited by the Sixth Amendment). The government must still defend the methods it used here and it has not done so.

B.      When Confronted with the Disclosed Chronology, the Government Creates a New One

Unable to defend the operation on the record disclosed to the defense, the government adds new facts and constructs a new investigative narrative in its Response. For the first time, it alleges that: (1) the inmate made a report in January 2024 to "law enforcement" concerning an October 2023 visit; (2) counsel and Mr. Hernandez made an "unsolicited" visit on or about February 1, 2024; (3) Mr.

Hernandez offered information, requested $150,000 "to give to" counsel, and offered to collect a drug debt; and (4) investigators then recorded the February 29 encounter as the "next logical step." ECF No. 124 at 4–5.

That chronology appears nowhere in the Complaint, the Superseding Indictment, or the discovery produced before the Motion was filed. Indeed, the government identifies no report number, declaration, witness statement, disclosure date, or Bates range supporting it. When cornered by a disclosed record showing that the February 29 recording preceded the interviews used to build this prosecution, the government attempts to manufacture an earlier investigative predicate through attorney argument.

The contradiction is apparent. The government states that the "Middle District of Florida investigation" began in the summer of 2024. *Id.* at 2. Yet it now claims that unidentified law enforcement personnel received allegations in January 2024, that a DEA agent monitored the February 29 recording, and that unidentified "authorities in Miami" possessed information beginning in January 2024. *Id.* at 4–5, 11. The Response never identifies which agency received the alleged report, which district opened the earlier investigation, who authorized the recording, whether MDFL participated in the operation, when MDFL first obtained the recording, or how it became part of this prosecution.

The government conceals those critical facts through carefully chosen passive language: information was "reported to law enforcement"; "investigators took the next logical step"; and "authorities in Miami had received information." *Id.* But the identity

of those investigators and authorities is precisely the issue. The government's claim that agents were responding to preexisting allegations, rather than creating the investigative predicate in violation of constitutional safeguards, cannot be tested until it identifies who did what, when, and at whose direction.

The government also changes the substance of the alleged January account. The earlier account referred to "the lawyer," not Mr. Hernandez. The Response now attributes the alleged conduct to Mr. Hernandez without producing the statement or explaining the change.[3] Likewise, the government attempts to explain away Mr. Hernandez's recorded refusals through the cooperator inmate's supposed belief that he was uncomfortable speaking while a third person was nearby. ECF No. 124 at 5 n.2. This is a self-serving interpretation attributed to the very inmate whose conduct and instructions are at issue. The government's constant shifting narrative in its Response creates more constitutional concerns than answers.

Simply put, the government cannot withhold its alleged investigative predicate from the charging documents and discovery, construct a materially different chronology after Mr. Hernandez's Motion exposes that omission and then ask the Court to accept the new account without evidence or scrutiny. The new narrative does not defeat the Motion; it confirms that the recording should be suppressed or that an evidentiary

---

[3]/ As detailed in Mr Hernandez's pending Motion to Dismiss [ECF No. 73] and Motion for Bill of Particulars [ECF No. 75], the government refuses to provide the alleged statements that constitute a misrepresentation or a false statement under the wire fraud statute.  To date, Mr. Hernandez has not received disclosure of any potential statements to former clients that can be classified as fraud.

hearing is warranted.

### C.    The Response's Attacks on Defense Counsel are Irrelevant, Unsupported and Should be Disregard

The Response repeatedly inserts undersigned counsel into a narrative that has no bearing on the constitutional question before the Court. It identifies counsel by name, discusses an alleged $1,000,000 fee proposal involving a different person, references counsel's representation of another individual, and without a sliver of evidentiary support,  attributes an alleged request  for $150,000 to counsel. ECF No. 124 at 3–5, 10. None of those allegations address the constitutional concerns raised in Mr. Hernandez's Motion to Suppress.

The allegation concerning a $1,000,000 representation agreement is especially improper. A proposed legal fee, without evidence that counsel made any false promise, knew of unlawful conduct, or received criminal proceeds, does not establish wrongdoing. It is also unrelated to the challenged recording and unnecessary to the government's consent, due process, or Sixth Amendment arguments. Its only apparent function is to associate defense counsel with the prosecution's accusation and attempt to prejudice the Court's consideration of the motion.

The Response similarly transforms Mr. Hernandez's legitimate work as a paralegal into innuendo. It emphasizes his access credentials and speaks of his "selective interchanging of his paralegal and client hats," *id.* at 10, while omitting that he worked as a paralegal on defense teams representing the persons the government labels Traffickers 1, 2, and 3. His involvement in their legal matters was not concealed,

it was the reason he had communications concerning legal representation, cooperation, and sentencing. The government may dispute whether particular conduct exceeded that role, but it cannot treat the existence of the professional role itself as proof of criminality.

Nor can the government use counsel's presence during preliminary discussions about possible representation to imply counsel's participation in alleged wrongdoing. Counsel never represented the cooperating inmate ("Trafficker 6") as the contemplated representation did not materialize. The government nevertheless places counsel at the center of its story while offering no evidence that counsel participated in planning the recorded encounter, knew it would occur, approved any alleged proposal, or was connected to the conduct challenged in the motion.

Mr. Hernandez does not ask the Court to adjudicate collateral accusations about defense counsel in this Reply. He asks that the Court disregard them as immaterial to the motion.

CONCLUSION

The government's tactical evasion of the issues presented in the Motion to Suppress, together with its newly created and unsupported chronology, confirms that the February 29, 2024, recording should be suppresses. Alternatively, Mr. Hernandez's respectfully requests that the Court conduct an evidentiary hearing in light of the due

process and constitutional issues raised in his Motion to Suppress.

Respectfully submitted,

**PIÑERA-VAZQUEZ LAW FIRM**
901 Ponce De Leon Blvd
Suite 400
Coral Gables, Fl. 33134
Tel: (305) 443-0629
Fax: (305) 377-3030

  /s/ Silvia B. Piñera-Vazquez
Silvia B. Piñera-Vazquez
sbp@pineravazquezlaw.com

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on July 29, 2026, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF.

   /s/ Silvia B. Piñera-Vazquez
Silvia B. Piñera-Vazquez, Esq.
